964 So.2d 121 (2007)
Marbel MENDOZA, Appellant,
v.
STATE of Florida, Appellee.
Marbel Mendoza, Petitioner,
v.
State of Florida, Respondent.
Nos. SC04-1881, SC05-2143.
Supreme Court of Florida.
May 24, 2007.
Rehearing Denied August 23, 2007.
*125 Neal A. Dupree, Capital Collateral Regional Counsel  Southern Region and Rachel L. Day and Carla Chavez, Assistant CCRC  Southern Region, Fort Lauderdale, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Marbel Mendoza appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.850, and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. We find that the circuit court erred in denying Mendoza's postconviction claims. Neither in its order nor in the record did the circuit court evaluate the evidence presented at the postconviction evidentiary hearing. We therefore reverse. The circuit court judge who heard the evidence is now deceased, and thus a new evidentiary hearing is to be held upon remand. We deny Mendoza's habeas petition on the merits.

I. FACTS AND PROCEDURAL HISTORY
Mendoza was convicted of first-degree murder, conspiracy to commit robbery, attempted armed robbery, armed burglary with an assault, and possession of a firearm during the commission of a felony following the killing of Conrado Calderon. The trial court sentenced him to death for the murder conviction, and we affirmed that sentence on direct appeal. Mendoza v. State, 700 So.2d 670, 672 (Fla.1997). The facts of this case were fully set out in our opinion on direct appeal. Briefly, Humberto Cuellar testified at Mendoza's trial that he, Mendoza, and Lazaro Cuellar, Humberto's brother, went to Calderon's home with the intention of robbing Calderon. Humberto testified that Lazaro remained in the car while Humberto and Mendoza approached Calderon. Humberto and Mendoza were armed as they approached Calderon, who was also armed, outside of Calderon's home. During the ensuing struggle, Calderon shot Humberto in the chest. Humberto then ran to Lazaro's car. As he ran, Humberto heard other shots. Less than a minute later, Mendoza arrived at Lazaro's car and stated that he had shot Calderon.
Following Mendoza's convictions and the penalty phase, the jury recommended a sentence of death by a seven-to-five vote. The trial court followed the jury's recommendation, sentencing the defendant to death for the murder conviction, as well as a prison sentence of fifteen years for the conspiracy to commit robbery conviction, fifteen years for the attempted armed robbery with a firearm conviction, and life imprisonment for the armed burglary with an assault conviction. State v. Mendoza, No. 92-9940C (Fla. 11th Cir. Ct. order *126 filed Aug. 2, 1994). In imposing this sentence, the trial court found two aggravating[1] and no mitigating factors.
Mendoza appealed his convictions and death sentence to this Court, raising nine issues.[2] We rejected each of Mendoza's claims and affirmed the convictions and death sentence. Mendoza, 700 So.2d at 679. The United States Supreme Court thereafter denied Mendoza's petition for writ of certiorari. Mendoza v. Florida, 525 U.S. 839, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998).
Mendoza filed an amended motion for postconviction relief on September 5, 2000, raising twenty-seven claims.[3] The circuit court summarily denied the motion on January 26, 2001, and Mendoza appealed. Following oral argument, we entered the following order:

*127 We have for review Mendoza's appeal from the circuit court's order summarily denying his Florida Rule of Criminal Procedure 3.850 motion. We vacate the circuit court's order and remand for an evidentiary hearing on the claims of ineffective assistance of counsel at the guilt and penalty phase of the original trial. The Chief Judge of the Eleventh Judicial Circuit shall appoint a new circuit court judge to preside over these proceedings. We dismiss Mendoza's petition for writ of habeas corpus without prejudice.
Mendoza v. State, 817 So.2d 848 (Fla. 2001).
On remand to the circuit court, a new trial judge was appointed to preside over the evidentiary hearings. Six postconviction evidentiary hearings were held from April 22, 2003, through March 14, 2004, and the defense called a number of witnesses at those hearings to support its ineffective assistance of counsel claims.
The circuit court denied Mendoza's postconviction motion claims in a very brief, two-page order, which simply set out the standards from case law for ineffective assistance of counsel claims and held: "This Court finds that the Defendant's petition did not meet nor did it overcome the requirements of the above-mentioned case law." State v. Mendoza, No. F92-9940C (Fla. 11th Cir. Ct. order filed Aug. 18, 2004). Mendoza appeals that denial, raising two issues.[4] Mendoza also petitions this Court for a writ of habeas corpus, raising nine issues.[5]

II. ANALYSIS OF ISSUES ON POSTCONVICTION APPEAL
Mendoza asserts that he received ineffective assistance of counsel at both the guilt and penalty phases of his trial. Mendoza asserts that his counsel was ineffective because his counsel relied on inconsistent theories as to the identity of the shooter in opening and closing statements; failed to call Lazaro Cuellar to testify; deficiently prepared the sole defense witness at trial; did not hire an investigator; failed to investigate and present mitigating evidence; improperly opened the door to otherwise inadmissible evidence; and called an improper witness at the penalty phase. To establish a claim of ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must show that counsel's deficiency prejudiced the defendant, which occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *128 A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. In considering a circuit court's denial of an ineffective assistance of counsel claim, we apply a mixed standard of review and therefore defer to the circuit court's factual findings, but review its legal conclusions de novo. Sochor v. State, 883 So.2d 766, 772 (Fla.2004).
Despite the six days of evidentiary hearings and extensive presentation of testimony, the circuit court's order essentially summarily denied Mendoza's postconviction claims. We expressly remanded the circuit court's previous summary denial of the postconviction motion for an evidentiary hearing on the ineffective assistance of counsel claims. As noted, evidentiary hearings were held, but following these extensive hearings, the circuit court neither stated on the record nor rendered an order detailing its factual findings and the reasons for its decision on the postconviction motion.[6]
A complete circuit court order enables this Court to review any factual and credibility questions with the appropriate standard of review. The evidentiary record here presents factual conflicts which must be resolved by the circuit court in findings of fact. Likewise, the circuit court's determination as to the credibility of expert testimony presented at the evidentiary hearing needs to be set forth in an order. Such factual and credibility determinations are not available in the instant case due to the brief and incomplete order of the circuit court.
Circumstances exist in this case which prevent our remanding to the circuit court for further explanation of the postconviction judge's decision on the basis of the evidence presented at the evidentiary hearings.[7] Instead, we must remand for a new evidentiary hearing so that the ineffective assistance of counsel claims can be properly considered and determined on the evidence presented to the new postconviction judge. Without the circuit court's determination in the instant case of the facts demonstrated at the evidentiary hearing or the credibility of the witnesses, we are unable to have a meaningful and appropriate appellate review.
For instance, one of Mendoza's claims is that trial counsel was ineffective for failing to call Lazaro Cuellar to testify at the guilt phase of trial. Arnaldo Suri and Barry Wax represented Mendoza at trial, and both testified at the evidentiary hearing. Neither Suri nor Wax could remember why they did not call Lazaro to testify at trial but maintained that their reason was part of the defense strategy. A determination including an evaluation of the credibility of the witnesses is necessary on this claim.
Mendoza also claims that his trial counsel was ineffective in preparing and presenting exculpatory evidence of gunshot residue. At trial, the defense presented only one witness: Gopinath Rao, a criminalist for the Miami-Dade County Police *129 Department who testified as an expert in particle analysis. Part of Rao's testimony was demonstrated by the State to be inaccurate because he reported the wrong time that gunshot residue swabs were taken from Lazaro and Humberto. This inaccurate testimony was highlighted by the State in its closing argument.
Without a postconviction order setting forth factual findings in respect to this claim, we cannot determine on appeal the merits of the claim that counsel were ineffective in preparing their witness at trial. See Freeman v. State, 761 So.2d 1055, 1065 n. 9 (Fla.2000) (without an evidentiary hearing and finding of fact by circuit court, it was unclear why defense counsel did not present certain evidence).
Mendoza raised numerous other guilt and penalty phase claims that require an evaluation of the evidence and factual determinations. Since the new evidentiary hearing will proceed under the clean slate rule in accordance with Preston v. State, 607 So.2d 404, 407 (Fla.1992), we will not further discuss here claims that should have had an evidence evaluation and factual findings. Each of Mendoza's claims and factual presentations must be made again. This case again demonstrates how this Court's appellate review of postconviction death penalty cases depends upon thorough and complete orders by the circuit court.

III. ANALYSIS OF HABEAS CLAIMS
Though we are remanding for a new evidentiary hearing on the postconviction claims, we deny the claims raised in Mendoza's petition for a writ of habeas corpus. Mendoza argues in his petition that appellate counsel was ineffective for failing to raise on direct appeal the following claims: (1) the trial court erred in limiting questioning regarding the victim's illegal activities; (2) the trial court erroneously denied the defense motion for mistrial following the prosecutor's improper remarks about the death penalty; (3) the trial judge made improper comments during voir dire; (4) the State made a variety of improper comments in its closing arguments at the guilt and penalty phases of trial; (5) the trial court erred in not granting defense motions relating to the State's violation of the witness sequestration rule; (6) the trial court gave erroneous jury instructions regarding expert witness evidence; (7) various improper remarks were made by the prosecutor and trial judge about the jury's note-taking; (8) the trial judge's ex parte communication with jurors was improper; and (9) the trial court committed constitutional error in admitting evidence of pending robbery charges.
When evaluating an ineffective assistance of appellate counsel claim, we must determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Moreover, "[t]he failure to raise a meritless issue does not constitute ineffective assistance of counsel." Fennie v. State, 855 So.2d 597, 607 (Fla.2003). "In fact, appellate counsel is not required to raise every conceivable nonfrivolous issue." Id.
*130 First, Mendoza argues appellate counsel was ineffective for failing to raise the issue on appeal that the trial court erred in denying the defense motion to present evidence of the victim's participation in bolito.[8] Evidence is generally admissible at trial, provided it is relevant. It is true that when evidence tends in any way to establish a reasonable doubt as to the defendant's guilt, it should be admitted. Rivera v. State, 561 So.2d 536, 539 (Fla.1990). "However, the admissibility of this evidence must be gauged by the same principle of relevancy as any other evidence offered by the defendant." Id. Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1995).
Mendoza argues that evidence that the victim was a bolitero was improperly excluded because it supported his defense to the robbery charges that Mendoza and the Cuellars' purpose in approaching the victim on the day of the murder was to collect a debt. However, we find that Mendoza's argument is without merit because he has failed to demonstrate that this evidence is relevant to his claim of innocence to the robbery conviction. Even if Mendoza was able and had been permitted to prove that the victim was a bolitero or that he was known to be one, such evidence would not have tended to prove a relevant fact. From the fact that the victim was a bolitero it could not be lawfully inferred that Mendoza or the Cuellars ever made a loan to the victim or that their purpose in going to the victim's house was to collect a debt. That inference would require stacking one inference upon another, which we decline to do. See Merck v. State, 664 So.2d 939, 942 (Fla.1995) (defendant could not demonstrate evidence was material or exculpatory without impermissibly stacking inferences). Appellate counsel is not ineffective for failing to raise a meritless issue on direct appeal, and we therefore deny this claim.
Mendoza also claims that the trial court should have granted the defense motion for mistrial after it altered its ruling on the admissibility of this evidence and that appellate counsel was ineffective for not raising this issue on appeal. Before trial, the court granted the State's motion in limine to prevent the defense from introducing evidence of the victim's arrest for racketeering. The trial judge stated at that time, however, that he did not have a problem with defense counsel asking the victim's wife whether the victim was a bolitero. Later, however, the trial judge limited the defense counsel's questioning of the victim's wife and police officers to whether they knew if the defendant was a bolitero at the time of his death. The trial judge denied the defense's motion for mistrial based on this evidentiary ruling.
We find that the trial judge's subsequent ruling did not significantly alter his original ruling on this evidence; he simply clarified that witnesses could only testify to information within their personal knowledge that the victim was a bolitero at the time of this crime. Therefore, the motion for mistrial was properly denied, and appellate counsel was not ineffective for failing to raise this issue on direct appeal.
Mendoza next argues that appellate counsel was ineffective for failing to raise the issue of the trial court's denial of a motion for mistrial based on improper prosecutorial comments during the State's closing arguments. The relevant comments *131 in the prosecutor's closing rebuttal argument were:
If you don't like the sentence, if you don't want to give him the death penalty, don't, but you promised in jury selection that this part of the trial is the guilt or innocence phase. It has nothing to do with the penalty, nothing. And if you don't like the penalty the other guys got, then adjust your recommendation then. Don't go for death. Forget about the death penalty 
The defense objected, and the trial court sustained the objection and gave the following instruction to the jury:
This case must not [be] decided for or against anyone because you feel sorry for anyone or are angry. Your duty is to determine whether the defendant is guilty or not guilty in accord with the law.
Following the conclusion of the State's rebuttal, the defense moved for a mistrial, which the trial court denied.
"A ruling on a motion for mistrial is within the sound discretion of the trial court. A motion for mistrial should be granted only when it is necessary to ensure that the defendant receives a fair trial." Cole v. State, 701 So.2d 845, 853 (Fla.1997) (citation omitted). We find that the trial court gave an appropriate curative instruction following the inappropriate comment by the prosecutor. Mendoza has failed to establish that the trial court abused its discretion in denying the motion for mistrial. We therefore deny Mendoza's claim that his appellate counsel was ineffective on this basis.
Mendoza next claims that several statements made by the trial court during voir dire were error that appellate counsel should have raised on direct appeal. Mendoza admits that the relevant comments were not objected to at trial but argues that they were fundamental error. In the absence of fundamental error, appellate counsel has no obligation to raise an issue that was not preserved for review. See Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000). Fundamental error is error that "reaches down into the validity of the trial itself to the extent that a verdict of guilt could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla. 1997) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
Mendoza cites the following comments as the basis for this claim, each made by the trial judge during voir dire:
Now I told you the defendant is presumed innocent. That presumption stays with him throughout the trial until those jurors who are selected go into the jury room and find that he has been proven either not guilty, and then the case will be over, or if you should in your deliberations decide that he is guilty beyond and to the exclusion of every reasonable doubt, of course, the presumption of innocence leaves him at that stage.
. . . .
You will understand that the defendant has an absolute right to remain silent and you are not to draw any inferences in this conduct. There may be a number of reasons why somebody remains silent; that is, somebody may not testify, and I am sure you can give many reasons why they have chosen to do that, whether they can't articulate themselves, or perhaps it is their inability to remember the facts, or the lawyer's recommendation not to testify.
. . . .
You may be asked who would like to hear from the defendant. Number one, understand that the defendant doesn't have to do anything. You understand *132 that the defendant has an absolute right to remain silent.
Now, you may personally feel that you would like to hear from him. There is nothing wrong with that as long as you understand that he doesn't have to do anything or say anything.
While comments on the defendant's silence or shifting the burden of proof to the defense can constitute error, we find that these particular comments were not fundamental error. In previously considering a similar claim, we held:
For an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process. See State v. Johnson, 616 So.2d 1, 3 (Fla. 1993). In cases in which courts have found judges' or prosecutors' comments to be fundamental error, the improper comments were made in the presence of the jury during the presentation of evidence or arguments. In this case, however, the judge made the complained-of comment prior to voir dire and in the context of describing trial procedure to prospective jurors. See Harmon v. State, 527 So.2d 182, 186-87 (Fla. 1988). . . . Our review of the record also demonstrates that subsequently throughout the trial the judge repeatedly instructed the jury to consider only the evidence presented at trial. We find, under the circumstances of this case, that this comment does not constitute fundamental error when considered in context of the entire trial.
Randall v. State, 760 So.2d 892, 901 (Fla. 2000) (some citations omitted). We find that the comments in the instant case were not fundamental error, and appellate counsel was not ineffective for failing to raise them on direct appeal.
Mendoza also asserts that comments made by the prosecutor during her guilt phase closing arguments were fundamental error. First, Mendoza asserts that the prosecutor denigrated the law before the jury in stating, "The Court is required to read to you a lot of instructions and many of them do not apply and I will discuss that with you." Mendoza also claims that the prosecutor's remarks in closing arguments improperly accused the defense of perpetrating a fraud. In commenting on the discrepancy between Rao's testimony as to the time of the sampling and the actual timing, the prosecutor stated that the defense knew that the testimony Rao gave was false and asserted that the defense purposely attempted to mislead the jury. Mendoza also claims that error occurred in the conclusion of the prosecutor's closing argument:
I'm going to sit down now and the defense attorney is going to have an opportunity to answer some questions for you and suggest to you how Criminalist Rao's testimony, which suggested to you Lazaro Cuellar might have, could have, would have, maybe if, fired a gun except this whole conclusion is based on the wrong time and they purposely put it on to mislead you because they knew the right time. Let him explain to you how it is that they have any evidence whatsoever that contradicts what Humberto Cuellar told you and that you shouldn't believe Humberto Cuellar.
No objections were made to these comments. Even if the prosecutor's comments were error, we find that they do not rise to the level of fundamental error such that appellate counsel could have successfully argued that this case warranted reversal on direct appeal. Therefore, we deny this claim.
Mendoza also asserts that certain comments during the prosecutor's *133 closing argument at the penalty phase of trial were reversible error. These comments included remarks indicating that the defendant's mitigating evidence was simply an excuse and that the testimony of one of the experts was "garbage." These comments were also not objected to, and so appellate counsel can only be deemed ineffective if the comments were fundamental error. To constitute fundamental error, improper comments by the prosecutor must be so prejudicial that they would taint the jury's verdict. Fennie v. State, 855 So.2d 597, 609 (Fla.2003). We find that the instant comments were not so egregious or so continuous as to constitute the same type of fundamental error that we have found in other cases. See Brooks v. State, 762 So.2d 879, 905 (Fla.2000) (finding fundamental error based on numerous, overlapping improprieties in the prosecutor's penalty phase closing argument).
In his next claim, Mendoza argues that appellate counsel was ineffective for not raising the issue that the trial court erred in denying the defense motion for mistrial due to the prosecutor's violation of the sequestration rule. "[T]he rule of sequestration is intended to prevent a witness's testimony from being influenced by the testimony of other witnesses in the proceeding." Wright v. State, 473 So.2d 1277, 1280 (Fla.1985). The trial court is given discretion in its enforcement of this rule. Id. The trial court held a hearing regarding the defense assertion that the State violated this rule because of the prosecutor's conversation with its rebuttal witness, Richard Gallagher. The trial court denied the motion for mistrial after Gallagher testified as to what he discussed with the prosecutor. Mendoza has failed to demonstrate that Gallagher's testimony was in any way altered or influenced by the conversation that he had with the prosecutor. The hearing transcript reveals that Gallagher simply testified about evidence that had been carefully gathered and documented before trial. See Lott v. State, 695 So.2d 1239, 1243 (Fla.1997) (finding that trial court properly denied request for sanctions because rule of sequestration was not violated since three witnesses in question testified regarding facts about physical evidence found at the crime scene). Therefore, this claim was meritless, and appellate counsel cannot be ineffective for failing to raise a meritless claim.
Mendoza next argues that appellate counsel should have raised the issue of the prosecutor's introduction of improper nonstatutory aggravating factors at the penalty phase closing arguments. The various comments made by the prosecutor that Mendoza argues introduced nonstatutory aggravators include:
The fact of the matter is the citizens in this country  and especially the citizens here in the State of Florida have decided that certain people and certain crimes warrant the death penalty.
. . . .
In your deliberations in the jury room the Judge tells you you are to go back there and first look at whether or not there are sufficient aggravating circumstances to warrant your recommending the death penalty before you even get to the mitigating.
I suggest to you that there are, that this defendant's actions and activities in this community, from what you have heard, warrants that you recommend that he receive the death penalty.
. . . .
. . . You heard nothing, nothing until after he had committed violent crimes against people in this community, that he wanted to say that he had mental *134 problems and that is why or that is some excuse for what he did.
Trial counsel did not object to any of these comments, and we find that Mendoza has failed to prove that the comments introduced nonstatutory aggravators or were fundamental error. Therefore, appellate counsel was not ineffective for failing to raise this issue.
Mendoza also argues that appellate counsel was ineffective for failing to argue error due to the closing remarks by the prosecutor addressing Mendoza's pending charges for robbery. However, it is clear that this issue was raised on direct appeal, and we found it to be harmless error. See Mendoza, 700 So.2d at 677-78 ("[T]he trial court erred in overruling appellant's objection to the State's question to Dr. Toomer during cross-examination and the comment in the State's closing argument asking whether Dr. Toomer was aware that the defendant had a pending trial in other robberies using a firearm."). Therefore, this claim is procedurally barred.
Mendoza also argues that appellate counsel was ineffective for failing to raise as an issue on direct appeal an error in the jury instructions on expert testimony. However, we have reviewed the instruction given and find that it was a standard jury instruction that Mendoza does not argue has been invalidated by this Court. We have held that "trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient." Thompson v. State, 759 So.2d 650, 665 (Fla.2000). Thus, appellate counsel was not ineffective for failing to raise this as an issue on direct appeal.
Mendoza next argues that the prosecutor violated the rules of discovery in presenting the medical examiner's opinion that the laceration on Calderon's head was consistent with having been caused by a Taurus nine millimeter gun. Mendoza fails to demonstrate what rule of discovery he is arguing on the basis of or how it was violated. From the record cited to by Mendoza, it is clear that the defense did object to this testimony on the basis of a discovery violationthat counsel had not been informed that the State's medical examiner had inspected the gun used by Humberto to hit the victim. The trial court held a Richardson[9] hearing, and the defense conceded that there was no prejudice. Mendoza sets forth no argument to dispute this conclusion, and thus we do not find error.
Next, Mendoza argues that comments by the trial judge and prosecutor led to the improper use of note-taking by the jury. It is within the sound discretion of the trial court to determine whether a jury may take notes. Kelley v. State, 486 So.2d 578, 583 (Fla.1986). Mendoza points to no case law or other support for his assertion that any comments at trial about the note-taking were improper. We do not find that these comments were fundamental error.
Mendoza also argues that error occurred during the penalty phase because the prosecutor's closing arguments set forth that Mendoza threatened to kill a victim in a previous similar crime introduced at the penalty phase as an aggravating factor. While the victim, who testified at the penalty phase, never explicitly stated that the defendant threatened to kill him, he did clearly state that Mendoza's accomplice told Mendoza to shoot the victim and then Mendoza hit the victim with the gun. We find that the prosecutor's *135 characterization of this testimony was accurate.
Mendoza's final arguments are that appellate counsel was ineffective for failing to successfully argue two of the issues raised to this Court on direct appeal. Mendoza does not explain how these arguments could have been successfully argued to obtain a different result than that reached on appeal. These claims are therefore denied because they are procedurally barred.

IV. CONCLUSION
Because we conclude that the circuit court's order effectively summarily denied postconviction relief, we remand to the circuit court for a new evidentiary hearing on the ineffective assistance of counsel claims. We deny Mendoza's petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found the following aggravating factors: (1) Mendoza was previously convicted of another capital felony or of a felony involving a threat of violence to a person; and (2) the crime was committed while Mendoza was engaged or was an accomplice in the commission of or an attempt to commit, or in flight after committing or attempting to commit a robbery, and the crime was committed for pecuniary gain.
[2] Mendoza argued that (1) the evidence at trial did not prove burglary as an underlying crime to felony murder; (2) the trial court erred in allowing the admission of the sworn prior consistent statement of Humberto Cuellar; (3) the trial judge engaged in improper ex parte communications with jurors; (4) the trial court erred in denying three challenges for cause to prospective jurors based on their beliefs concerning the death penalty; (5) the trial court erred in excluding mitigation evidence; (6) the trial court erred in allowing the State to improperly impeach Mendoza's expert witness; (7) the trial court erred in finding the aggravating circumstance that the murder was committed for pecuniary gain; (8) the trial court erred in failing to adequately consider Mendoza's proposed mitigation; and (9) the death penalty is not proportional.
[3] Mendoza raised the following claims: (1) Mendoza had insufficient access to public records; (2) Mendoza was denied a fair trial due to the cumulative effects of ineffective assistance of counsel, withholding of exculpatory or impeaching material, newly discovered evidence, and improper trial court rulings; (3) the State withheld evidence that was exculpatory and material; (4) trial counsel was ineffective for failing to challenge jurors based on their biases toward the death penalty; (5) the State's arguments and the trial court's statements at trial presented impermissible considerations to the jury, misstated the law and facts, and were inflammatory and improper; (6) Mendoza was denied the right to an adequate mental health evaluation; (7) trial counsel failed to investigate and prepare mitigating evidence; (8) Mendoza is innocent of first-degree murder; (9) Mendoza is innocent of the death penalty; (10) incorrect penalty phase jury instructions were given by the trial judge; (11) the trial court gave erroneous instructions to the jurors on the standard by which they must judge expert testimony; (12) the jury received inadequate guidance on aggravating circumstances; (13) the State improperly introduced nonstatutory aggravating factors; (14) prosecutorial and judicial comments to the jury mischaracterized the importance of the jury's role; (15) Florida's rules prohibiting appellate counsel from interviewing jurors are unconstitutional; (16) trial counsel was ineffective for failing to object to the State's overbroad and vague arguments in aggravating circumstances; (17) execution by electrocution or lethal injection is cruel and unusual punishment; (18) Florida's capital sentencing scheme is unconstitutional; (19) pretrial publicity and failure to change venue denied Mendoza a fair and impartial jury; (20) the trial court erred in refusing to find and consider mitigating circumstances clearly set out by the record; (21) the trial court's sentencing order does not reflect an independent weighing or reasoned judgment; (22) Mendoza was denied a proper direct appeal because of omissions in the record; (23) it was unconstitutional for the judge and jury to consider Mendoza's prior conviction in the penalty phase; (24) the death sentence was predicated on an automatic aggravating factor; (25) the trial judge was not impartial; (26) Mendoza is insane to be executed; and (27) the jury venire was not properly sworn before trial.
[4] Mendoza asserts in his postconviction appeal that defense counsel was ineffective at the guilt and penalty phases of his trial.
[5] Mendoza asserts in his habeas petition that appellate counsel was ineffective for failing to raise on direct appeal the following claims: (1) the trial court erred in limiting questioning regarding the victim's illegal activities; (2) the trial court erroneously denied the defense motion for mistrial following the prosecutor's improper remarks about the death penalty; (3) the trial judge made improper comments during voir dire; (4) the State made a variety of improper comments in its closing arguments at the guilt and penalty phases of trial; (5) the trial court erred in not granting defense motions relating to the State's violation of the witness sequestration rule; (6) the trial court gave erroneous jury instructions regarding expert witness evidence; (7) various improper remarks were made by the prosecutor and trial judge about the jury's note-taking; (8) the trial judge's ex parte communication with jurors was improper; and (9) the trial court committed constitutional error in admitting evidence of pending robbery charges.
[6] We now require that following an evidentiary hearing, a circuit court "shall render its order, ruling on each claim considered at the evidentiary hearing and all other claims raised in the motion, making detailed findings of fact and conclusions of law with respect to each claim, and attaching or referencing such portions of the record as are necessary to allow for meaningful appellate review." Fla. R.Crim. P. 3.851(f)(5)(D). Mendoza's motion was filed before the effective date of this rule revision, but that does not affect the necessity of findings of fact and reasons for decisions in deciding motions which predate October 1, 2001, when these motions are still under consideration.
[7] The postconviction judge is deceased.
[8] According to arguments made at trial and at the evidentiary hearing, "bolito" is an illegal lottery. Evidence that the victim was a bolitero, or ran the lottery, was claimed to be a critical part of the defense theory.
[9] Richardson v. State, 246 So.2d 771 (Fla. 1971).